IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

IRAKLI ZHUZHIASHVILI, )
)
                Petitioner, )
)
  v. )   Case No. 25-3189-JWL
)
C. CARTER, Warden, FCI-Leavenworth; )
RICARDO WONG, Field Office Director, )
   ICE ERO Chicago; and )
TODD LYONS, Acting Director, )
   Immigration and Customs Enforcement; )
KRISTI NOEM, Secretary, )
   Department of Homeland Security; and )
PAMELA BONDI, Attorney General, )
)
                Respondents. )
)
_____)

## MEMORANDUM AND ORDER

Petitioner, through counsel, filed a petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges his detention by immigration officials after he was granted withholding of removal. For the reasons set forth below, the Court **grants** the petition. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **October 17, 2025**, and shall provide notice to this Court when that release is effected.

Petitioner is a native and citizen of the country of Georgia. Petitioner entered the United States unlawfully in June 2024, and he was detained by immigration officials shortly thereafter. Removal proceedings were initiated, and on February 10, 2025, an

immigration judge ordered removal but granted petitioner withholding of removal to Georgia (meaning he could only be removed to an alternative third country). Petitioner is presently detained within this judicial district. On September 15, 2025, petitioner filed the instant habeas action, and respondents have filed a response to the petition.

Petitioner claims that his continued detention by immigration authorities is improper. To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S. C. § 2241(c)(3). This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Generally, when an alien is ordered removed, the removal is to occur within a period of 90 days, referred to as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). The parties agree that petitioner's removal period began on March 12, 2025, when his order of withholding became administratively final after neither side filed an appeal within 30 days. *See id.* § 1231(a)(1)(B)(i); 8 C.F.R. § 1241.1(c). Specifically, petitioner claims that, after more than six months since the beginning of the removal period, his detention has become unreasonably indefinite, and that his release is therefore required under the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the 90-day removal period and that the Government may continue to detain an alien after that period or release the alien under supervision. *See id.* at 683 (citing 8 U.S.C. § 1231(a)(2), (6)). The Court held, however, that "once removal is no longer reasonably foreseeable,

continued detention is no longer authorized by the statute." *See id.* at 699. The Court elaborated on that standard as follows:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. . . .
>
> We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

*See id.* at 699-700 (citations omitted). The Supreme Court then established a presumptively reasonable detention period of six months in which to accomplish removal, after which the reasonableness of an alien's detention should be determined as follows:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*See id.* at 701; *see also, e.g.*, *Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2-3 (D. Kan. Jan. 18, 2017) (Lungstrum, J.) (applying this framework); *Kaliku v. United States Immigration and Customs Enforcement*, 2024 WL 4854523, at *2-3 (D. Kan. Nov. 21, 2024) (Lungstrum, J.) (same); *Vargas v. Noem*, 2025 WL 2770679, at *2-3 (D. Kan. Sept. 29, 2025) (Lungstrum, J.) (same).

The Court finds that petitioner has met his burden to provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" in his case. The Court disagrees with respondents' contention that petitioner can point to nothing more than the failure to effect his removal within six months. As petitioner notes, because he cannot be removed to his home country under the withholding order, officials must find a third country that is willing to accept him; and officials have made no progress towards his removal or even identified a possible destination. *See Vargas*, 2025 WL 2770679, at *2 (petitioner met his burden where he had been detained well beyond the six-month period, he could not be removed to his home country, and officials had not even been able to identify a possible third country for his removal); *Diaz-Cruz v. Noem*, 2025 WL 2806780, at *2 (D. Kan. Oct. 2, 2025) (Lungstrum, J.) (same).

Moreover, petitioner has provided additional evidence buttressing his claim. On March 4, 2025, an immigration official made the following statement in an email to petitioner's attorney:

> We are submitting acceptance requests to three other countries once a final order takes effect. These are never successful, so as long as we get denial from three other countries and there is no derogatory information in your client's background we would move forward with release rather than the 90 day custody review.

4

Subsequently, in an email to the attorney on April 23, 2025, a different official conceded that "ERO has made no arrangements to have [petitioner] removed to a third-party country," based on the mistaken belief that petitioner's order of withholding did not allow for such a removal. Respondents attempt to dismiss these statements as "stray comments," but they have not explained why the statements should not be considered here. The evidence thus suggests that officials will make requests to three alternative countries, seemingly to satisfy some quota – although in this case, it appears that no such requests were made – and that such requests are generally futile. Those concessions provide further support for the conclusion that petitioner has provided good reason to believe that removal is unlikely in the foreseeable future.[1]

The Court further concludes that respondents have not rebutted that showing by petitioner. In a declaration submitted by respondents, an immigration official states only that inquiries have been made within the Government to identify a possible third country for petitioner's removal and that "ICE will continue its efforts to identify alternative countries to which Petitioner can be removed." The Court does not find such evidence to be sufficient, however. It does not appear that officials have made an actual request to a third country in the nearly seven months since the removal order became final, despite the assurance to petitioner's attorney that such requests would be made; nor have respondents or their declarant even identified a single country to which removal might be possible. *See*

---

[1] The Court declines respondents' invitation to set out rules or guidelines to govern its determination regarding a petitioner's burden beyond the standard set by the Supreme Court in *Zadvydas*, application of which depends on the particular circumstances of a case.

5

*Vargas*, 2025 WL 2770679, at *3; *Diaz-Cruz*, 2025 WL 2806780, at *3. Nor have respondents offered any evidence explaining why officials have not been able to undertake any such efforts in petitioner's case.

Finally, respondents note that ICE has the option to seek termination of the withholding of removal so that petitioner could then be removed to his home country. Respondents have not offered any argument supporting reversal of the withholding order on its merits, however; nor have they provided evidence that officials have begun the process of seeking a termination or even have contemplated doing so. The general concept that withholding orders may be terminated as appropriate does not bear on the likelihood of petitioner's future removal. *See Diaz-Cruz*, 2025 WL 2806780, at *3.

In sum, respondents have not been able to provide evidence or even point to any specific fact that creates a significant likelihood that, even though officials effectively have taken no affirmative steps to remove petitioner since his removal order became final, petitioner will nonetheless be removed in the reasonably foreseeable future. Petitioner's detention has become unreasonably indefinite, and the Court therefore concludes that petitioner must be released, subject to appropriate terms of supervision. *See Zadvydas*, 533 U.S. at 700.

Accordingly, the Court grants the petition for habeas relief, and respondents are ordered to effect petitioner's release by **October 17, 2025**.

IT IS THEREFORE ORDERED BY THE COURT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted**.  Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **October 17, 2025**, and shall provide notice to this Court when that release is effected.

IT IS SO ORDERED.

Dated this 7th day of October, 2025, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge